**In the Matter of Michael K. DEARDORFF.**

**No. 580S132.**

Supreme Court of Indiana.

Oct. 15, 1981.

Leroy K. New, Carmel, for respondent.

Sheldon A. Breskow, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

This disciplinary proceeding is before this Court pursuant to Admission and Disciplinary Rule 23, Section 15. In accordance with the procedures set forth in this Rule, upon the filing of a Verified Complaint by this Court's Disciplinary Commission, a Hearing Officer was appointed; subsequently, a hearing was conducted and the appointed Hearing Officer filed his findings of fact and conclusions. No petition for review has been filed.

Upon examination of the matters which have been submitted under this cause, noting that there is no objection to the Hearing Officer's Report of Findings of Fact and Conclusions, we now adopt and accept such report as our findings of fact. Accordingly, we find that the Respondent, Michael K. Deardorff, was admitted to the practice of law in Indiana on May 1, 1974.

During September, 1975, Charlotte Graham, Bettie Spencer, and Roseanna Rush employed the law firm of Ellis, Gamble and Nolan in Kokomo, Indiana to represent them in a cause of action arising out of a joint will executed by their father and stepmother. The case was assigned within the firm to the Respondent with the client's consent. This was the first case assigned to Respondent by the senior lawyers. Between September, 1975, and December, 1976, Graham, Spencer and Rush met with Respondent on numerous occasions and conversed with him by telephone regarding their case.

The Respondent filed a certificate of readiness on June 11, 1976, and a date for a pretrial conference was set, but later continued by the Court. During that time period, the Respondent told his clients that the pretrial conference was repeatedly postponed.

After December, 1976, and through January 3, 1980, the Respondent did not attempt to obtain a hearing date or do anything to advance the case of his clients. He did not know what to do in order to properly advance the matter and did not seek the guidance of any other attorney in his law firm because he was embarrassed to talk to them about his inability to adequately serve his clients.

During this period of time the Respondent informed his clients of the progress of their case in an effort to keep them happy, when in truth and in fact there was no progress whatsoever. He told his clients on

more than one occasion that a trial had been set in the matter when no such date had been set.

Sometime between December of 1976 and January 3, 1980, the Respondent also told his clients the estate in question had assets of approximately $79,000.00 when there was no evidence to support that statement. It later appeared that the estate may have had a maximum value of no more than $30,000.00.

During 1979 Respondent informed his clients that a change of venue was requested and granted and that Judge Allen A. Rasor, Superior Court of Kosciusko County, Warsaw, Indiana, was to hear the case. The Respondent reported to his clients the result of a meeting which purportedly took place with Judge Rasor, attorney Joseph A. Noel and Respondent, when in fact Judge Allen A. Rasor had died on July 30, 1978 and the case had never been venued out of Howard County. During this same time Respondent also told his clients that he had "fired" Judge Rasor and had called the Indiana Supreme Court which appointed Judge Thomas K. Milligan, Montgomery Circuit Court. Respondent then indicated to his clients that he had told Judge Milligan to abandon his consideration of the matter and that the Indiana Supreme Court would now hear the case. These representations were untrue.

In late 1979, the Respondent informed his clients that a hearing would be scheduled before the Indiana Supreme Court for January 3, 1980. On this date the Respondent, in the company of his clients, traveled from Kokomo, Indiana, to the Statehouse in Indianapolis, Indiana, purportedly to attend the hearing which the Respondent had asserted he had scheduled with the Indiana Supreme Court for 10:00 a. m., that day. Upon arriving at the Statehouse, the Respondent seated his clients in the fourth floor corridor of the Statehouse, repeatedly entered a door on the third floor and returned to the fourth floor informing his clients that their hearing was being delayed by the Indiana Supreme Court.

Later that morning the Respondent escorted the clients to the Block's Department Store Restaurant in downtown Indianapolis stating that their hearing would be further delayed. While at the restaurant the Respondent left several times, purportedly, to make phone calls and on each occasion stated that the hearing was being further delayed by the Indiana Supreme Court. After the lunch hour the Respondent made another telephone call and informed his clients that their hearing would be rescheduled by the Indiana Supreme Court for another day to be set by the Court, whereupon the Respondent and his clients returned to Kokomo, Indiana.

In fact, the Respondent did not then have a case pending before the Indiana Supreme Court, nor did the parties have a hearing or an appointment scheduled with the Indiana Supreme Court or any of its individual members on January 3, 1980, or at any time as was asserted by the Respondent.

About 3:00 p. m. on January 3, 1980, Karl Mulvaney, Assistant Administrator of the Supreme Court of Indiana, spoke on the telephone with Charlotte Graham. She inquired if the Respondent and four other people had an appointment with members of the Court at 10:00 a. m. on that same day. No such meeting was scheduled or occurred. The Supreme Court took no action on the case in question on January 3, 1980. The records in the case show that it was dismissed by the trial court with prejudice on the Motion of Defendant, the party opposing Respondent's clients.

Respondent concedes that he has engaged in professional misconduct and expresses genuine remorse. He likewise concedes that after his first falsehood to his clients concerning the matter, one deception led to another by escalation.

In view of the foregoing considerations, this Court now finds that:

1) The Respondent, by repeatedly informing his clients that their case was set for trial when it was not, by stating to his clients many times over a period of more than three years that progress was being made in their case when he was doing nothing to resolve the matter, by stating to his

clients that they had a conference with members of the Supreme Court of Indiana, and by bringing his clients to the Indiana Statehouse for the purpose of that conference when in truth and in fact there was no conference scheduled, engaged in conduct involving dishonesty, fraud, deceit and misrepresentation in violation of Disciplinary Rule 1–102(A)(4) of the *Code of Professional Responsibility for Attorneys at Law*;

2) The Respondent, by accepting employment in this matter and not seeking assistance in providing legal services to his clients when he did not know how to properly proceed in this type of litigation, handled a legal matter which he knew he was not competent to handle without associating with him a lawyer competent to handle it in violation of Disciplinary Rule 6–101(A)(1) of the *Code of Professional Responsibility for Attorneys at Law*;

3) The Respondent, by failing to work toward a resolution for his clients through reasonably available means for a period of more than three years, neglected a legal matter entrusted to him in violation of Disciplinary Rules 6–101(A)(3) and Disciplinary Rule 7–101(A)(1) of the *Code of Professional Responsibility for Attorneys at Law*;

4) The Respondent, by accepting employment in this matter and not working toward a resolution in the case, failed to carry out a contract of employment entered into with a client for professional services in violation of Disciplinary Rule 7–101(A)(2) of the *Code of Professional Responsibility for Attorneys at Law*;

5) The Respondent, in that the case was dismissed with prejudice following his failure to progress his clients' claim, prejudiced and damaged his clients during the course of the professional relationship in violation of Disciplinary Rule 7–101(A)(3) of the *Code of Professional Responsibility for Attorneys at Law*; and,

6) The Respondent engaged in conduct, when viewed *in toto*, prejudical to the administration of justice adversely reflecting on his fitness to practice law in violation of Disciplinary Rule 1–102(A)(5) and (6) of the *Code of Professional Responsibility for Attorneys at Law*.

The findings in this case establish that Respondent pursued a deliberate course of deception for a period of more than three years. This was not merely negligence; Respondent engaged in a conscious, elaborate process whereby events lending credence to his misrepresentations were staged.

This bizarre course of action defies explanation. Youth and inexperience, standing alone, cannot define, justify or significantly mitigate Respondent's acts. For three years Respondent had the opportunity to approach any lawyer with expertise in the field or to research the law and procedures relative to this type of litigation. Yet, he only took steps to escalate the falsehood which he had initiated.

There is no place in the practice of law for deceiving one's client. Deception of a client strikes at the very heart of the oath taken by each person who assumes the position of attorney. In light of the foregoing considerations we find that a period of suspension is warranted. It is therefore, ordered that, by virtue of the misconduct found herein, the Respondent is suspended from the practice of law for a period of not less than one (1) year; beginning November 16, 1981.

Costs of this proceeding are assessed against the Respondent.